ELLIS, Judge,
dissenting:
The majority opinion in this case, as well as the opinions of the district court and the State Board, overlook an important fact.
Dr. Nelson was notified of his dismissal, effective at the end of the 1968 spring semester, by letter dated June 8, 1967. On March 1, 1968, he wrote to V. J. Scogin, President of the Board, as follows:
“This letter is being written in accordance with instructions received regarding my position at Southeastern Louisiana College.
“Several months have passed since the administration at Southeastern Louisiana College was instructed to investigate the Department of Agriculture. In view of the fact that some problems were associated with personality conflicts and since a number of changes in leadership have been made at the College it would appear that a review of the situation might now be in order.
“The interest that you have expressed in reviewing this matter is appreciated.”
I think this is clearly a request for a hearing, by the Board, of Dr. Nelson’s appeal from his dismissal.
Thereafter, attempts were made to retain Dr. Nelson on the faculty at Southeastern, including a recommendation by the president, Dr. Parker, that he be retained, on probation. The Board refused to reconsider its original decision, and Dr. Nelson was so notified by Dr. Parker on May 27, 1968.
It is true that, since that time, Dr. Nelson never formally requested a hearing of his appeal. However, I do not believe it was necessary that he do so, since he had already appealed the initial action of the Board.
Before filing the first of these suits in August, 1975, Dr. Nelson spent seven years trying to get a hearing from the Board. He talked to many members of the Board, including Messrs. Woodard, Wetstone, Curry, Peltier, Bopp, Egan, Colbert, and Bankston. Almost all of them expressed interest in his case and promised him action. The record is replete with evidence of these attempts to get a hearing, including testimony, correspondence between Dr. Nelson and various Board members, and minutes of the meetings of the Board. On February 20, 1974, Dr. Nelson received a letter from Louis Michot, then Superintendent of Education, advising him that his case was still under consideration.
Dr. Nelson testified that he had attended at least twelve meetings of the Board during this period, sometimes at the explicit invitation of a member, but was never af *951 forded the hearing which he sought. Until he received his court ordered hearing, Dr. Nelson had never been advised of the reason for his dismissal, much less given an opportunity to present a case to the Board.
I must admit that seven years is a long time to wait before attempting to compel action on the part of the Board by filing a suit. However, the actions of the Board itself, and of some of its members, were the major contributing cause of this delay. I believe that the circumstances of this case require that Dr. Nelson’s ease be heard and decided on its merits.
On the merits, I find the dismissal to be completely illegal. None of the grounds for dismissal of a tenured professor, which are expressed in the S.L.U. Handbook, are present in this case. Although Dr. Nelson was fully qualified to teach, and had taught, both chemistry and mathematics, he was never formally offered, nor did he refuse the opportunity to teach in these departments. In any event, the record conclusively shows that it was contemplated by the Agriculture Department that Dr. Nelson would have a full teaching load for the 1968-1969 school year. It is true that there were not many students in Dr. Nelson’s area of specialization, but it is just not true that there were no students for him to teach. Dr. Nelson, naturally, wanted to remain in his field of specialization, but he was never given the opportunity to refuse to teach in other areas.
Dr. Nelson was fired without legal cause, and his constitutional rights to notice and a hearing have been denied him. I believe he should be reinstated, and I therefore dissent.